FILED

UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT 03 DEC 24  P 12: 30

U.S. DISTRICT COURT

THADDEUS TAYLOR

:     PRISONER
:     CIVIL NO. 3:02CV229 (DJS)(TPS)

v.                                    :

JOHN ROWLAND, ET AL.          :          DECEMBER 22, 2003

## MEMORANDUM IN SUPPORT OF OBJECTION TO PLAINTIFF'S MOTION FOR TEMPORARY AND PRELIMINARY INJUNCTIVE RELIEF

### BACKGROUND

The plaintiff in this case has several civil rights actions pending.  He is proceeding pro se in this case.  The plaintiff seeks (Docket #54) "adequate and reasonable access to his legal case files," to "telephonically contact his attorney[s]."  He claims he has "five other related matters in which he has counsel."  Finally he requests that the defendants be directed to stop harassing or retaliating against him.

In Docket #57, the plaintiff seeks to prevent the defendants from "reclassifying the protective unit – adversely."[1]  The plaintiff claims these acts are being done as a "retaliatory act against Protective Custody inmates."  The plaintiff suggests the defendants could take less "intrusive measures."  Finally, he requests an evidentiary hearing to address these issues.

The plaintiff was transferred from Cheshire Correctional Institution to the Corrigan/Radgowski Correctional Center on December 8, 2003.  He no longer resides in the protective custody unit at Cheshire Correctional Institution.

DEFENDANTS
John Rowland, et al.

RICHARD BLUMENTHAL
ATTORNEY GENERAL

BY:

Michael J. Lanoue
Assistant Attorney General
110 Sherman Street
Hartford, CT 06105
Federal Bar #ct05195
E-Mail: michael.lanoue@po.state.ct.us
Tel: (860) 808-5450
Fax: (860) 808-5591

## CERTIFICATION

I hereby certify that a copy of the foregoing was mailed to the following on this 22nd day

of December 2003:

Thaddeus M. Taylor #237855
Corrigan/Radgowski Correctional Center
982 Norwich-New London Turnpike
Uncasville, CT 06382

Michael J. Lanoue
Assistant Attorney General

## ARGUMENT

## Standard For Injunctive Relief[2]

On June 25, 1996, the United States Supreme Court issued a significant decision in a class action prisoner case challenging alleged denial of access to court. Lewis v. Casey, 518 U.S. 343, 116 S.Ct. 2174, 135 L.Ed.2d 606 (1996). This opinion admonishes district court judges once again to avoid getting involved in the day-to-day running of the state's prison systems. 116 S.Ct. at 2185. Turner v. Safley, 482 U.S. 78 (1987).

The Supreme Court has long held that injunctive relief is an "extraordinary remedy" that should not issue as a matter of course or to restrain acts whose injurious consequences are "merely trifling." Weinberger v. Romero-Barcelo, 456 U.S. 305, 311-312 (1982) (quoting Consolidated Canal Co. v. Mesa Canal Co., 177 U.S. 296, 302 (1900)). Instead, an injunction "should issue only where the intervention of a court equity 'is essential in order effectually to protect ... rights against injuries otherwise irremediable.'" Id., at 312 (quoting Cavanaugh v. Looney, 248 U.S. 453, 456 (1919)). According to the Court, "the principles of equity ... militate heavily against the grant of an injunction except in the most extraordinary circumstances." Rizzo v. Goode, 423 U.S. 362, 379 (1976).

When a plaintiff seeks permanent injunctive relief from an alleged constitutional violation, he must first establish the fact of the violation. Rizzo v. Goode, 423 U.S. at 477;

---

[1]     Docket #54, entered November 20, 2003, Motion for Temporary Restraining Order by Thaddeus M. Taylor; Docket #57, entered December 4, 2003, Motion for Preliminary Injunction by Thaddeus M. Taylor.

[2]     The standard for injunctive relief under 42 U.S.C. § 1983 for prisoner cases such as the instant action has been clarified by the Prisoner Litigation Reform Act (PLRA). This case is governed by the provisions of the PLRA, Pub. L. No. 104-134, 110 Stat. 1321 (1996).

<u>Newman v. State of Alabama</u>, 683 F.2d 1312, 1319 (11th Cir. 1982), <u>cert. denied</u>, 460 U.S. 1083 (1983). If the plaintiff successfully makes such a showing, he must then demonstrate both <u>a continuing irreparable injury if the injunction does not issue</u>, and the lack of an adequate remedy at law. <u>New York State National Organization For Women v. Terry</u>, 886 F.2d 1339, 1362 (2d Cir. 1989), <u>cert. denied</u>, 460 U.S. 1083 (1983). "Only when that dual burden has been satisfied should the court grant injunctive relief, but even then the relief granted should be no broader than necessary to cure defendants' unconstitutional conduct." <u>Rosenberg v. Meese</u>, 622 F. Supp. 1451, 1476 (S.D.N.Y. 1985); <u>Kendrick v. Bland</u>, 740 F.2d 432, 437 (6th Cir. 1984); <u>see also</u> PLRA, Pub. L. No. 104-134, 110 Stat. 1321 (April 26, 1996).

Under the PLRA, no injunction may issue unless it is "narrowly drawn, extends no further than necessary to correct the violation of the federal right, and is the least intrusive means necessary to correct the violation of the federal right." 18 U.S.C. § 3626(a)(1)(A) as amended by the PLRA (April 26, 1996). Plaintiff simply has no immediate irreparable injury in this case. To the extent plaintiff alleges he suffered a past constitutional injury, which defendants deny, there is an available remedy for money damages. Moreover, plaintiff's claimed relief is not narrowly drawn, extends into the area of correctional expertise and discretion which is solely the jurisdiction of the Commissioner, i.e., how to classify prisoners for security risks, and fails to set forth sufficient facts to give plaintiff standing to raise any cognizable federal claim. <u>See Lewis v. Casey</u>, 116 S.Ct. at 2183 (plaintiff fails to allege any actual injury).

In order to establish irreparable injury, "there must be some actual, viable, presently-existing threat of serious harm – one that is not remote or speculative." <u>City of New York v. Angelbrook Ltd. Partnership</u>, 891 F. Supp. 908, 925 (S.D.N.Y.), <u>aff'd</u>, 58 F.2d 35 (2d Cir. 1995).

3

The fact that the plaintiff has allegedly suffered injury in the past is not sufficient.  "Absent a threat of continuing or future injury, a permanent injunction is unwarranted."  Jade Aircraft Sales, Inc. v. City of Bridgeport, 849 F. Supp. 10, 12 (D. Conn. 1994), citing O'Shea v. Littleton, 414 U.S. 488, 495-496 (1974) ("[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief ... if unaccompanied by any continuing, present adverse effects.").  Finally, "appropriate consideration must be given to principles of federalism in determining the availability and scope of equitable relief."  Rizzo v. Goode, 423 U.S. 362, 379 (1976).  "The restraints of federalism must be applied not only when an injunction is sought against the judicial branch of state government, but also when an injunction is urged 'against those in charge of an executive branch of any agency of state and local government [].'"  Kendrick v. Bland, 740 F.2d 432, 437 (6th Cir. 1984) (quoting Rizzo v. Goode, 423 U.S. 362, 380 (1976)).  In such cases, "federal courts must be constantly mindful of the 'special delicacy of the adjustment to be preserved between federal equitable power and State administration of its own law.'"  Rizzo v. Goode, supra, quoting Stefanelli v. Minard, 342 U.S. 117, 120 (1951); see also Turner v. Safley, 482 U.S. 78, 84-85 (1987); PLRA (April 26, 1996); Casey v. Lewis, 116 S.Ct. at 2185-86.

"[I]nterim injunctive relief is an 'extraordinary and drastic remedy which should not be routinely granted.'"  Buffalo Forge Co. v. Ampco-Pittsburgh Corp, 638 F.2d 568, 569 (2d Cir. 1981); quoting Medical Society of New York v. Toia, 560 F.2d 535, 538 (2d Cir. 1977).  In addition, a federal court should grant injunctive relief against a state or municipal official "only in situations of most compelling necessity."  Vorbeck v. McNeal, 407 F. Supp. 733, 739 (E.D. Mo.), aff'd, 426 U.S. 943 (1976).

The same standard governs consideration of temporary restraining orders and preliminary injunctions. <u>Local 1814, Int'l Longshoremen's Ass'n v. New York Shipping Ass'n.</u>, 965 F.2d 1224, 1228 (2d Cir. 1992). In this circuit the standard for injunctive relief is well established. The moving party "must show: (a) that it will suffer irreparable harm in the absence of an injunction and (b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor." <u>Tom Doherty Assocs., Inc. v. Saban Entertainment, Inc.</u>, 60 F.3d 27, 33 (2d Cir. 1995). Although a showing that irreparable injury will be suffered before a decision on the merits may be reached is insufficient by itself to require the granting of a preliminary injunction, it is nevertheless the most significant condition which must be demonstrated. <u>Citybank, N.A. v. Citytrust</u>, 756 F.2d 273, 275 (2d Cir. 1985). To demonstrate irreparable harm, the plaintiff must show "'an injury that is either remote nor speculative, but actual and imminent' and that cannot be remedied by an award of monetary damages." <u>Shapiro v. Cadman Towers, Inc.</u>, 51 F.3d 328, 332 (2d Cir. 1995) (quoting <u>Tucker v. Anthony Realty Corp. v. Schlesinger</u>, 888 F.2d 969, 975 (2d Cir. 1989)).

The plaintiff's claims for temporary or preliminary relief as to the protective custody unit at Cheshire Correctional Institution are moot. He is no longer confined to that facility. Even if he remained, the defendants' decisions to separate protective custody inmates based on security concerns is not a matter for judicial intervention. The plaintiff calls these decisions "classification." To the extent they are classification issues, the plaintiff needs to be reminded once again that there is no federally protected right to the classification of his choice.

It is clear under applicable caselaw and the PLRA that plaintiff has no right to injunctive relief unless he has a federally protected right in his classification status. This right does not exist. It is well established that prisoners have no constitutionally protected interest or federally protected right in their classification. See Moody v. Daggett, 429 U.S. 78, 88 n9 (1976); Pugliese v. Nelson, 617 F.2d 916 (2d Cir. 1980).

The Second Circuit rejects the notion that classification decisions are protected by due process. Pugliese v. Nelson, supra, at 925. In Pugliese, the Second Circuit Court of Appeals stated emphatically:

> Moreover, judicial intervention into the classification of prisoners for monitoring and control purposes would almost inevitably involve the federal courts in the day-to-day operations of our prison system, which are better left to the expertise of prison administrative authorities.

Id., at 925, citing Bell v. Wolfish, 441 U.S. 520, 547-48 (1979). The Pugliese court, citing Procunier v. Martinez, 416 U.S. 396 (1974), admonished:

> We further observe that, on occasion, prison administrators may be 'experts' only by Act of Congress or of a state legislature. But judicial deference is accorded not merely because the administrator ordinarily will, as a matter of fact in a particular case, have a better grasp of his domain that the reviewing judge, but also because the operation of our correctional facilities is peculiarly the province of the Legislative and Executive Branches of our Government, not the Judicial. Procunier v. Martinez, supra, at 405; cf, Meachum v. Fano, supra [427 U.S.], at 229 ....

The plaintiff's claims for phone calls to his "attorneys" should be rejected for numerous reasons. In the present case, the plaintiff is not represented by counsel. To any extent his legal counsel in those other cases cannot have reasonable contact with the plaintiff, they can file the appropriate motion in those cases. The plaintiff harasses the defendants and the Department of

Correction with similar motions in other cases.  See, e.g., Ruling on Plaintiff's Pending Motions, Taylor v. Armstrong, Civil No. 3:97CV973 (WIG), pp. 3-4, in which the Court granted his motion "only to the extent … consistent with institutional rules.  It is otherwise DENIED." (Copy of decision attached).  The plaintiff has no right to access to the courts, to legal phone calls, to his materials based on his whim and desire.  He has been and is being provided adequate access to his legal materials.  See attached Affidavits of Carlone and Fortin.  His purely conclusory allegations of retaliation notwithstanding, he has not been deprived of access to the courts.[3]  Furthermore, the plaintiff has no constitutional right to access in the manner and amount of his choosing.  The plaintiff, like all inmates, is limited in the number of legal phone calls that he can make in a month (absent unusual circumstances).  The plaintiff may, however, write to his attorney or his attorney may request a phone call, or his attorney may have a professional visit. The plaintiff has no legal right to access in the manner he prefers or at his convenience.

**CONCLUSION**

Plaintiff's motions should be denied.

---

[3]    The plaintiff has not demonstrated that his access is not adequate with facts showing actual harm.

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THADDEUS TAYLOR | : | CIVIL NO. 3:02CV229 (DJS) |
| v. | : | |
| JOHN ROWLAND, ET AL. | : | DECEMBER 17, 2003 |

## **AFFIDAVIT**

I, MICHAEL FORTIN, being first duly sworn, depose and say:

1.    I am a Counselor at the Cheshire Correctional Institution and have been so employed since October of 1998.

2.    I am presently the Counselor for North Block 6 at Cheshire which is part of the protective custody housing at the facility.

3.    I have been Counselor in North Block 6 since January 2003.

4.    The plaintiff was in North Block 5 until about 1 ½ months ago.

5.    Shortly after the plaintiff arrived in North Block 6, he requested access to some legal materials.  I became aware of this request from Counselor Hadlock.

6.    I was involved in off-site training at this time and I was informed by Counselor Hadlock that it was not an emergency.

7.    Upon returning from training, I addressed the plaintiff's request on my first day back at the facility.

8.    I was not informed of any complaint by the plaintiff until about 1 ½ weeks ago, when the plaintiff informed me I was being "investigated".  I am not aware of any grievance being filed by the plaintiff regarding my actions.

9.     The plaintiff also claimed he had an order from the Court allowing him more than the two legal phone calls provided in the Administrative Directives.  He has not provided me with a copy of the order nor have I been contacted by the Attorney General's Office with any court order regarding legal issues.

10.     I have responded to the plaintiff's requests in the same manner as I do for the other 99 inmates in North Block 6.  I have not retaliated against him nor given him preferential treatment. Our guidelines are to respond within 15 days, except to legal calls.  I believe I have responded to the plaintiff's requests in a timely manner and ordinarily in a much shorter time than the guidelines state.

11.     The plaintiff is no longer incarcerated at Cheshire Correctional Institution.


        I have read the foregoing and it is all true and accurate to the best of my knowledge and belief.


        _____
        Counselor Michael Fortin

Subscribed and sworn to before me this 22nd day of December 2003.


        _____
        Notary Public
        Commissioner of the Superior Court

2

UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| THADDEUS TAYLOR | : | CIVIL NO. 3:02CV229 (DJS) |
| v. | : | |
| JOHN ROWLAND, ET AL. | : | DECEMBER 17, 2003 |

## AFFIDAVIT

I, CAPTAIN JOSEPH CARLONE, being first duly sworn, depose and say:

1.     On November 21, 2003, I was contacted by Assistant Attorney General Michael Lanoue who requested that I investigate allegations by the plaintiff that he was being harassed and retaliated against by staff at Cheshire Correctional Institution.

2.     On November 26, 2003, I interviewed the plaintiff regarding these allegations.

3.     The plaintiff identified Counselor Michael Fortin as the staff person who had been harassing him.

4.     The plaintiff informed me that his complaint was that he was not being allowed access to his legal materials.

5.     The plaintiff claimed that his requests were not timely responded to and that the courts had ordered that he have immediate access to these materials.

6.     The only order from the courts that I am aware of requires the staff at Cheshire to respond in the ordinary course in accordance with institutional policy.  I have requested that the plaintiff provide me with any court orders regarding his legal access, but he has not complied with this request.

7.    Institutional policy limits the amount of material an inmate can have in a cell for safety and security reasons.

8.    The plaintiff is aware of his policy.

9.    All inmates who require access to legal materials not kept in their cells make a request to their counselor to obtain and/or exchange materials.

10.    Counselors perform numerous functions in a correctional facility and have as many as ninety-nine inmates to respond to when they need to obtain a legal phone call, legal materials, classification issues, visiting lists, other property requests, and other responsibilities.

11.    It is not possible for a counselor to respond immediately to every request by an inmate.

12.    The plaintiff indicated that he was not having a problem at the time of my interview with him on November 26, 2003. <u>See</u> attached interview notes initialed and signed by the plaintiff.

13.    The plaintiff's main complaint was one instance when he claimed he did not receive a response for two weeks.  It is my understanding that one request was made at a time when Counselor Fortin was receiving training away from the facility for four days and Counselor Hadlock was covering his own block, North Block 5, as well as Counselor Fortin's block, North Block 6.  It is also my understanding that Counselor Hadlock contacted Assistant Attorney General Lanoue to determine if this request needed to be addressed immediately and was told it was not an emergency.

14.    It is my understanding that Counselor Fortin addressed the request in a timely fashion when he returned from training.

15.    The plaintiff stated he had no present problem with staff, including Counselor Fortin.

2

16.    To my knowledge, the plaintiff did not file any grievances regarding these claims nor inform his unit manager, which would have been the proper procedure.

17.    The plaintiff is no longer incarcerated at Cheshire Correctional Institution.

I have read the foregoing and it is all true and accurate to the best of my knowledge and belief.

Captain Joseph Carlone

Subscribed and sworn to before me this ___18___ day of December 2003.

Notary Public
Commissioner of the Superior Court

3




# Cheshire CI Correctional Institution
## Facility Investigators Office
### Inmate Statement

|  | Thadius Taylor #237855 |
|---|---|
|  |  |
|  | Captain Joseph N. Carlone |
|  | 11/26/03 |

*Question:* You make a claim that you are being harassed by staff at Cheshire CI. Can you identify the staff who is harassing you?

*Answer:* AT the time of the claim Counselor Fortin. As for the complaint for harassment is that he knew that I need access to my Legal work and not to interfering with this. AS for me having access to my legal work this has been through Major Hall, Captain Saundry and the Courts. According to Counselor Fortin he was not aware of this. Counselor Fortin has given me access to my legal work and when I made the complaint it to took two weeks for access to my legal work. After this complaint was filed I have had reasonable access to my legal work by Counselor Fortin. I'm not sure if I will have access to the legal work in the future. *TT*

*Question:* Has Counselor Fortin threatened you or caused any type of physical harm towards you?

*Answer:* No *TT*

*Question:* You statement of harassment is based on the fact that you feel that you are not allowed access to your legal work in a reasonable time frame?

*Answer:* Yes this is true but also he should know that I should have access to my legal work in a reasonable time frame along with legal calls. *TT*

1

UNITED STATES DISTRICT COURT    FILED
DISTRICT OF CONNECTICUT

-----------------------------------------------------------x        2003 ___ ___ ___ 12: 21
THADDEUS TAYLOR                             :
          Plaintiffs,                       :          CIVIL ACTION NO.
                                            :          3:97-cv-973 (WIG)
     v.                                     :          *CW*
                                            :
JOHN ARMSTRONG, et al.                      :
          Defendants.                       :
-----------------------------------------------------------x

## RULING ON PLAINTIFF'S PENDING MOTIONS

Currently pending are plaintiff's motion in limine (Doc. #85), motion for a temporary restraining order against James Dzendura, John Armstrong, Dennis Jones, Luis Sosa, and Rocco Sweat (Doc. #98), motion to compel discovery (Doc. #99), motion for pretrial conference and affirmative trial date (Doc. #100), motion for continuance of court ordered deposition and motion for court order prohibiting defendants from interfering with work productivity (Doc #102), and motion for attachment of wages, assets, property and savings; garnishment of wages, assets and property, and prejudgment remedy (Doc #103).

In his motion in limine (Doc. #85), plaintiff requests that the Court prohibit any mention or introduction of evidence or documents at trial of his prior criminal convictions, disciplinary reports, or hearings. Plaintiff also requests that the Court prohibit defendants from bringing to the attention of the jury prior convictions or disciplinary reports of other inmates serving as witnesses. Under Fed. R. Evid. 609 defendants may introduce evidence for the purposes of impeachment of a witness any felony convictions within the last ten years subject to Fed. R. Evid. 403. Consequently, the Court denies this motion, but will consider evidence of prior convictions under Rule 403 and the Court may prohibit defendants from presenting any evidence for which the prejudicial effect outweighs the probative value.

In his motion for a temporary restraining order (TRO) (Doc. #98), plaintiff requests that the Court grant an injunction to stop defendants from "harassing, retaliating against or otherwise punishing the plaintiff." He also requests that the Court order that he not be housed or placed in the New Haven Correctional Center, that when necessary defendants Dzendura and Armstrong transport him directly from the Cheshire CI to the Superior Court or Federal Court and then directly back to Cheshire CI, that the staff place seatbelts on him while he is being transported, and that he receive adequate meals on his trips to court.

Federal Rule of Civil Procedure 65(b) provides that "

A temporary restraining order may be granted without written or oral notice to the adverse party or that party's attorney only if (1) it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or that party's attorney can be heard in opposition, and (2) the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give the notice and the reasons supporting the claim that notice should not be required.

Plaintiff's motion for a temporary restraining order is DENIED because he has not shown that immediate and irreparable injury, loss, or damage will result before the defendant can be heard in opposition. To the extent plaintiff is claiming physical harm, this sets forth a new cause of action that the Court will not add to either of his pending cases.

In his motion to compel discovery (Doc #99), the plaintiff is seeking the Court to order the defendants to provide him with the current address, inmate number, and/or last known address of all named defendants and all named witnesses in the trial memoranda. In addition plaintiff requests that the court allow him to have direct correspondence with the witnesses who are inmates and one direct, unmonitored telephone call to all named witnesses in the trial memoranda. Finally, plaintiff requests that the court direct defendants to allow him access to a law library or legal books at the Cheshire CI, unlimited ability to contact the Inmate Legal Assistance Program by telephone, and that "reasonable" telephone

calls of a legal nature be allowed upon plaintiff's request. Plaintiff's motion is DENIED to the extent he seeks direct contact with other inmates and GRANTED to the extent information can be provided to him in a manner consistent with institutional rules.

Plaintiff's motion for pretrial conference and affirmative trial date (Doc #100) is GRANTED in part and DENIED in part. The undersigned conducted a pretrial conference in this case on July 22, 2003. While a trial date has not yet been scheduled, the undersigned will endeavor to schedule this matter for trial by the end of this year, unless there is good cause shown for a later date.

Plaintiff's motion for an order rescheduling the deposition of defendant John Armstrong requests that the deposition be held on August 4, 2003 at the Cheshire Correctional Facility in an area routinely used for inmates' legal visitors (Doc #102). He also requests adequate access to his legal case files so that he might prepare for the deposition. In addition, plaintiff requests an order prohibiting the defendants from harassing or retaliating against him in any manner and from interfering with his work productivity. Finally, he requests an independent review of Attorney Strom's conduct in connection with this case. Plaintiff's motion for an order rescheduling the deposition of John Armstrong is DENIED. Plaintiff certainly has sufficient personal knowledge to conduct the deposition, and plaintiff's own demands and conduct are preventing the deposition from going forward. Nevertheless, DOC should provide plaintiff access to his files in a manner consistent with correctional needs. Plaintiff's motion to prohibit defendants from harassing or retaliating against him in any manner and from interfering with his work productivity is GRANTED only to the extent it is consistent with his other motions requesting the names and addresses of defendants and witnesses, access to his legal files, and access to Inmate Legal Services in

3

a manner consistent with institutional rules. It is otherwise DENIED.

Plaintiff requests an order for the attachment of wages, assets, property, and savings, and the garnishment of wages, assets, and property of defendant John Armstrong and all named defendants (Doc #103). He also requests an order prohibiting all named defendants from transferring, investing, selling, or donating any property or assets without express written permission from the Court and notice to the plaintiff. He further requests an order prohibiting defendants from moving out of Connecticut, relocating any property or assets outside of Connecticut or otherwise attempting to hide or conceal any of their property, assests, or wages up to and including $500,000. Plaintiff requests that defendant Armstrong in particular immediately file with the Court all records and documents including savings, cash, stocks, bonds, investments, IRA's, real property, and assets up to $500,000 along with the location and records of all his assets and cash up to $500,000 before he leaves Connecticut for Iraq. In addition he requests an order that defendant Armstrong provide all the details of his tour in Iraq including his expected return date and the name and address of his next of kin or anyone responsible for his property and assets in the event he does not return. Finally, plaintiff requests an order requiring the named defendants to file monthly updates of their financial records and statements with the Court. Plaintiff's motion is DENIED. The application does not comply with Connecticut statutes, and there is no reason to believe a prejudgment remedy is necessary.

4



## CONCLUSION

Plaintiffs' motions (Doc #99),  (Doc #100), and (Doc #102) are GRANTED in part and DENIED in part.   Plaintiffs' motions (Doc #85), (Doc. #98), and (Doc #103) are DENIED.

SO ORDERED, this 14th day of August 2003, at Bridgeport, Connecticut.

William I. Garfinkel
United States Magistrate Judge

5